# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**STEVEN ANTHONY WALCOTT, JR.**               **CIVIL ACTION**

**VERSUS**                                                    **NO. 17-1125**

**TERREBONNE PARISH**                                **SECTION: "S"(3)**
**CONSOLIDATED GOVERNMENT, ET AL.**

## REPORT AND RECOMMENDATION

Plaintiff, Steven Anthony Walcott, Jr., a state pretrial detainee, filed this federal civil rights action pursuant to 42 U.S.C. § 1983.[1]  He sued the following defendants: the Terrebonne Parish Consolidated Government; Dr. Haydell, Sr.; Richard "Peedie" Neal; Warden Claude Trich; Major Steven Bergeron; Maj. Slaugth; Lt. Shwausz; Sgt. Vandorin; Lt. Nicholas Daigle; Sgt. Mike; Sgt. Bryan Boaugard; Lt. Carroll White; Sgt. Broday; Nurse Kimberly Boudreaux; Nurse Monique; unidentified parish jail officers; and unidentified members of the jail medical staff.  Plaintiff's rambling complaint is filled with a litany of grievances; however, he appears to be asserting the following claims:  (1) he was denied medical care and medication for his pre-existing conditions; (2) he was required to sleep on a mattress on the floor; (3) he was housed with a "non-medical detainee," Leo Kember, as a form of retaliation; (4) after a confrontation with Kember, plaintiff was placed on segregated lockdown without a hearing as a form of retaliation; (5) Kember's placement on the shared unit posed a danger to plaintiff; and (6) plaintiff was housed in unsanitary conditions while on lockdown.

---

[1] Plaintiff is a frequent litigant in this Court.  For example, his other filings include, but are not limited to, the following civil rights actions:  Walcott v. Nurse Pat, Civ. Action No. 16-15587 "R"(5) (dismissed); Walcott v. Terrebonne Parish Jail Medical Department, Civ. Action No. 16-15594 "B"(4) (currently on appeal from dismissal); Walcott v. Terrebonne Parish Jail Medical Staff, 17-6703 "G"(5) (pending); Walcott v. Larpenter, Civ. Action No. 17-6710 "B"(1) (pending).

In order to conduct the screening mandated by federal law, the Court obtained and filed into this federal record certified copies of plaintiff's medical records and the records relating to his placement on lockdown.[2]  Copies of those records were provided to plaintiff for his use in this proceeding.

## I.  Screening Standards

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).[3]  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit,[4] federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)    is frivolous or malicious;
> (ii)   fails to state a claim on which relief may be granted; or
> (iii)  seeks monetary damages against a defendant who is immune from such relief.

---

[2] Rec. Doc. 9.

[3] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

[4] Plaintiff initially requested and was granted pauper status. Rec. Docs. 4 and 5.  Although he has now paid the filing fee, he remains subject to the screening provisions of 28 U.S.C. § 1915.  Grant v. Howell, 235 Fed. App'x 326 (5th Cir. 2007); Fogle v. Pierson, 435 F.3d 1252, 1257-58 (10th Cir. 2006).

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact."  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[5] the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## II.  Plaintiff's Claims

### A.  Terrebonne Parish Consolidated Government

As noted, plaintiff has named the Terrebonne Parish Consolidated Government as a defendant.  However, as the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, *a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted*.  To satisfy the cause in fact requirement, *a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom.*  The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted; emphasis added).  Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."  Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).  Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights.  See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3.  In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom of the Terrebonne Parish Consolidated Government, much less identify such a policy or custom.

---

[5] The Court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

Accordingly, he has failed to state a proper claim against that defendant, and the claim against the Terrebonne Parish Consolidated Government should therefore be dismissed.

## B.  Remaining Defendants

In addition, plaintiff has named numerous individuals as defendants – some of whom are properly identified, some of whom are only partially identified, and some of whom are not identified at all by name.  However, he makes little effort to link the defendants to his various claims by identifying the manner in which each defendant allegedly violated his rights.  That is obviously improper, in that "[p]laintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation.  This standard requires more than conclusional assertions:  The plaintiff must allege specific facts giving rise to the constitutional claims."  Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).  Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action."  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).[6]

Nevertheless, even if plaintiff had properly linked the defendants to his various claims, the underlying claims would still be subject to dismissal as explained below.  Therefore, rather than requiring plaintiff to attempt to remedy the foregoing defect in pleading, the undersigned recommends that, in the interest of judicial economy, the claims simply be dismissed as frivolous and/or for failing to state a claim on which relief may be granted for the following reasons.

---

[6] This, of course, assumes that plaintiff is suing the individuals in their individual capacities rather than in their official capacities.  However, if plaintiff intended to sue the defendants in their official capacities, he has failed to state a claim against them.  It is clear that "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."  Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999).  Accordingly, any official-capacity claim against the individuals would in reality be a claim against the local governmental body itself.  Picard v. Gusman, Civ. Action No. 12-1966, 2012 WL 6504772, at *4 (E.D. La. Nov. 26, 2012), adopted, 2012 WL 6504528 (E.D. La. Dec. 13, 2012); Alexander v. City of Gretna, Civ. Action No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); Weatherspoon v. Normand, Civ. Action No. 10-060, 2010 WL 724171, at *2-3 (E.D. La. Feb. 22, 2010). However, as already explained, to state a cognizable claim against a local governmental body, a plaintiff must allege that an official policy or custom caused the purported constitutional violation.  Again, plaintiff has made no such allegation in this case.

## 1. Medical Care

Plaintiff's first claim is that he was denied adequate medical care at the Terrebonne

Criminal Justice Complex. Specifically, he alleges:

> Petitioner was denied medical care for a pre-existing condition. …
> Petitioner was refused his prescribed pain medication and medical treatment for a
> pre-existing condition in which he was receiving therapy to his right shoulder from
> a surgery, on February 4, 2016 to replace his rotator cuff, and that caused injury to
> his left shoulder.[7]

He further alleged:

> On May 20, 2016 Petitioner was denied adequate medical treatment for his
> right arm in which he was receiving therapy for the use and full range of motion in
> his arm. Petitioner was denied therapy and his pain medication by Nurse David
> and was housed in Unit B-200 assigned to sleep on floor in a boat "E-I Bunk" under
> cold conditions that put extreme pain in his right arm, which caused Petitioner to
> sleep on his left arm inside on a hard boat with only enough cotton inside the
> mattress to fill only about half of the mattress that left his left arm feeling in more
> pain than the right arm. On May 20, 2016 Petitioner notified medical of his pre-
> existing condition of his leg, right leg in which the pre-existing condition is inside
> petitioner's chart. Nurse David not only denied treatment and medication for
> petitioner's pre-existing conditions but he also created another painful condition to
> petitioner's other arm, his left arm. Petitioner notified medical by writing medical
> request. Petitioner, and still to this day on the 23rd day of January, 2017, still
> endure extreme pain to his right but mostly to his left shoulder where sometimes he
> can't move his neck side to side in or out of prayer cause his muscles are sore in
> his shoulder.[8]

In order to conduct the screening required by federal law, the Court obtained a certified

copy of plaintiff's medical records from the Terrebonne Parish Criminal Justice Complex. Those

records were voluminous and showed continual medical treatment for a variety of ailments and

complaints. As to the specific medical problems on which the instant lawsuit is based, the records

documented the following requests and treatment:

| 05/20/2016 | During the medical intake screening after his most recent arrest, plaintiff noted that he was currently undergoing medical treatment for a work-related injury to his right shoulder. |
|---|---|

---

[7] Rec. Doc. 3-1, pp. 2-3.
[8] Id. at p. 6.

| | |
|---|---|
| 05/23/2016 | Plaintiff was prescribed Ibuprofen for complaints of pain from rotator cuff surgery. |
| 05/28/2016 | Plaintiff submitted sick-call request complaining of right arm and shoulder pain. On examination, it was noted that he was currently undergoing a course of treatment with Ibuprofen. He was ordered to continue with that treatment until conclusion and he would then be reevaluated. |
| 06/10/2016 | Plaintiff submitted a sick-call request complaining of pain. On examination, he complained of right arm pain. He had completed his course of treatment with Ibuprofen and had no visible loss of mobility. However, he was prescribed Naproxen for pain. |
| 08/12/2016 | Plaintiff submitted sick-call request complaining of pain in his right shoulder. He was prescribed Naproxen. |
| 10/09/2016 | Plaintiff submitted sick-call request complaining of pain in his shoulders and bones. He was prescribed Naproxen. |
| 10/17/2016 | Plaintiff was in an altercation at the jail and afterwards complained of leg/knee pain. He was evaluated at the Chabert Medical Center ("Chabert"). The CT scan and the x-ray of right knee showed a tibial plateau fracture. |
| 10/22/2016 | Plaintiff submitted a sick-call request complaining of knee pain. The nurse noted that plaintiff was receiving Naproxen and was already scheduled for a surgical appointment. |
| 10/23/2016 | Plaintiff submitted a sick-call request for pain medication. He was offered but refused Ibuprofen. He was then offered and accepted Naproxen. |
| 10/24/2016 | Plaintiff was seen at Chabert for his right knee injury. X-rays were taken, and he was scheduled for surgery on 11/03/2016. He was prescribed Tylenol for pain. |
| 11/03/2016 | Surgery (open reduction and internal fixation of right tibial plateau fracture) was performed at Chabert. Plaintiff was discharged the following day. |
| 11/06/2016 | Plaintiff requested that his pain medication be changed from Oxycodone/Acetaminophen (Percocet) to Tramadol (Ultram). That request was granted, and he was prescribed Tramadol and Flexeril. |
| 11/19/2016 | Plaintiff requested pain medication. He was offered but refused Tramadol. He was offered and accepted Flexeril. |
| 11/21/2016 | Plaintiff was seen in the Chabert orthopedic clinic for a post-operative evaluation of his right leg. He reported that his pain was controlled and that he was compliant with his brace. X-rays were ordered, sutures were removed, and he was referred for therapy. |
| 11/23/2016 | Plaintiff submitted a sick-call request complaining of leg pain. He was prescribed Flexeril. |
| 11/28/2016 | Plaintiff submitted a sick-call request complaining of knee pain. He was referred to the doctor. |
| 11/29/2016 | Plaintiff was to be seen for a post-operative knee examination. |

| 12/02/2016 | Plaintiff submitted a sick-call request complaining of knee pain. He was given medications as prescribed and informed that he had an appointment scheduled in the near future. |
|---|---|
| 12/13/2016 | Plaintiff was to be seen for a post-operative knee examination; however, he refused to the see the physician. |
| 12/28/2016 | Plaintiff was seen at the Chabert orthopedic clinic for a post-operative evaluation of right knee. He reported that his pain was controlled and he was compliant with brace. An x-ray was taken and it was recommended that he be allowed to use crutches and receive physical therapy. |
| 12/29/2016 | Dr. Haydel requested an appointment for plaintiff in the Chabert orthopedic clinic for the knee injury. Plaintiff received appointment for 02/08/2017. |
| 01/13/2017 | Plaintiff complained of pain and requested Naproxen. Although no distress was noted, he was given the medication as requested. |
| 01/23/2017 | Plaintiff requested and was given Naproxen. |
| 01/27/2017 | Plaintiff requested Naproxen for right knee pain. He was granted a fourteen-day prescription. |
| 02/08/2017 | Plaintiff was seen at the orthopedic clinic at Chabert for his right knee injury. He reported that his pain was controlled and he was compliant with brace. He was prescribed Tramadol (Ultram), Tylenol, and Phenergan, and physical therapy was recommended. |
| 02/15/2017 | Plaintiff requested and was granted permission to keep with him and use a knee brace from the orthopedic clinic. |
| 02/25/2017 | In response to a request from plaintiff, he was prescribed Naproxen twice a day for 7 days. |
| 03/04/2017 | Plaintiff submitted a request for Naproxen for his shoulders. The nurse's notes stated that the medication would be "refilled as per standing orders." |
| 03/18/2017 | Plaintiff was prescribed Flexeril after complaining of muscle spasms. |

Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that

even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). For the purposes of this decision, the Court will assume that plaintiff's shoulder and knee injuries constituted serious medical needs.

Nevertheless, plaintiff cannot show that those needs were met with deliberate indifference. The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). That is obviously the situation here. Plaintiff's medical records show that he received medical attention each time he submitted a sick-call request. He was provided with medical care not only at the jail, but also specialized care at the Chabert Medical Center. His condition was monitored, he was provided follow-up examinations at Chabert as ordered, and he was allowed to use his medical devices at the jail and provided a variety of medications for pain.

Although plaintiff obviously believes that even more should have been done to ensure his comfort, his dispute amounts to nothing more than a disagreement at to what medical care was necessary.  However, absent exceptional circumstances, a disagreement concerning treatment simply does not constitute deliberate indifference.  Gobert, 463 F.3d at 346; see also Brauner v. Coody, 793 F.3d 493, 500 (5th Cir. 2015) (a prison doctor's "refusal to accommodate [a prisoner's] requests in the manner he desired" is not deliberate indifference).  Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges.  Federal courts are therefore reluctant to second-guess such medical decisions in federal civil rights actions.  Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action.").  There is no basis whatsoever to engage in such second-guessing in the instant case.

The foregoing conclusion is not changed by the fact that plaintiff's injuries were not completely healed or that he was not free from all pain.  Where, as here, an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment.  Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Nor is the foregoing conclusion changed by the fact that plaintiff's medical care "may not have been the best money could buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether plaintiff was satisfied with his care, whether his medical problem persisted despite treatment, or whether his medical treatment was subpar in some respect; rather, it is only whether he had a serious medical need that was met with deliberate indifference. He did not. Accordingly, his claim that he was denied adequate medical care is legally frivolous and should therefore be dismissed.

## 2. Denial of a Bunk

Plaintiff's second claim is that he was denied a bunk and, as a result, he was required to sleep on a mattress on the floor. Even if that is true, his claim is not actionable because the Constitution does not require elevated beds. See Gaines v. McDonald, 577 Fed. App'x 335 (5th Cir. 2014) ("There is no authority holding that a prisoner has a constitutional right to sleep in an elevated bed."); Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986); accord Sanders v. Kingston, 53

Fed. App'x 781, 783 (7th Cir. 2002); <u>Finfrock v. Jordan</u>, No. 95-3395, 1996 WL 726426, at *1 (7th Cir. Dec. 6, 1996); <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985); <u>Williams v. Gusman</u>, Civ. Action No. 15-96, 2015 WL 5970424, at *4 (E.D. La. Oct. 14, 2015); <u>McCarty v. McGee</u>, Civ. Action No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008). As a result, plaintiff's claims that he had to sleep on a mattress on the floor should be dismissed as frivolous. <u>See, e.g.</u>, <u>Pitt v. Weaver</u>, Civ. Action No. 15-360, 2015 WL 2452348, at *3 (E.D. La. May 21, 2015); <u>Bean v. Pittman</u>, Civ. Action No. 14-2210, 2015 WL 350284, at *4 (E.D. La. Jan. 26, 2015); <u>Jones v. Ford</u>, Civ. Action No. 2:08cv176, 2009 WL 235355, at *2 (S.D. Miss. Jan. 30, 2009).[9]

### 3. Retaliatory Housing Assignment

Plaintiff next complains that the defendants retaliated against him by housing him with Leo Kember. Specifically, plaintiff states: "In retaliation for filing a grievance, the medical department assigned Leo Kember a non-medical detainee to the medical unit to collide in confrontation with petitioner so that petitioner may be moved into regular population to be hurt."[10]

The United States Fifth Circuit Court of Appeals has noted that retaliation claims must be "regarded with skepticism." <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995) (quotation marks omitted). Further, the Fifth Circuit has held:

> To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Causation requires a showing that but for the retaliatory motive the complained of incident would not have occurred.

---

[9] This result is not changed by plaintiff's allegations that sleeping on the floor was uncomfortable due to his medical problems. Plaintiff's medical records do not reflect that he requested a bunk as a form of medical accommodation from the jail medical authorities, much less that such an accommodation was found by the medical staff to be medically necessary.
[10] Rec. Doc. 3-1, p. 7.

McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (internal quotation marks and ellipsis omitted).

Regarding the first prong of that inquiry, plaintiff alleges that the retaliation was based on the fact that he had filed a grievance. Inmates clearly have a First Amendment right to submit grievances. See, e.g., Richard v. Martin, 390 Fed. App'x 323, 325-26 (5th Cir. 2010) (acknowledging that there is a First Amendment right to file a prison grievance); Woods, 60 F.3d at 1164 ("The law of this circuit is clearly established ... that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."); Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989) (noting that the First Amendment's right of freedom of expression encompasses a right to file a prison grievance).

Nevertheless, despite the fact that plaintiff's retaliation claim properly invokes a recognized constitutional right, it still fails because there is no reason to believe that Kember's unit assignment in fact stemmed from a retaliatory motive. To support a retaliation claim, a prisoner must be able to either produce direct evidence of retaliatory motivation or show a chronology of events from which retaliation may plausibly be inferred. Woods, 60 F.3d at 1166. Here, plaintiff has not identified any direct evidence indicating that Kember's placement on the medical unit resulted from a desire to retaliate against plaintiff. Further, the chronology of events does not support an inference of a retaliatory motive. Even if plaintiff did in fact file a grievance and then Kember was subsequently assigned to the medical unit, there is no basis for the Court to infer that the latter event was in any way connected to the former. On the contrary, it is hardly an uncommon occurrence for inmates to submit complaints, and plaintiff has failed to explain (and this Court cannot imagine) why the mere filing of a routine grievance, without more, would so enrage the

13

defendants that it would spur them to retaliate.  See, e.g., Jackson v. Mizell, Civ. Action No. 09-3003, 2009 WL 1792774, at *6 (E.D. La. June 23, 2009), adopted, 2009 WL 2176113 (E.D. La. July 20, 2009), aff'd, 361 Fed. App'x 622 (5th Cir. 2010); see also Kennedy v. McCain, Civ. Action No. 16-2906, 2016 WL 5724806, at *4 (E.D. La. May 27, 2016), adopted, 2016 WL 5678568 (E.D. La. Oct. 3, 2016); Swank v. Tanner, Civ. Action No. 11-3122, 2012 WL 1565298, at *5 (E.D. La. Mar. 29, 2012), adopted, 2012 WL 1565349 (E.D. La. May 1, 2012); Wetzel v. Strain, Civ. Action No. 09-7198, 2010 WL 630034, at *6 (E.D. La. Feb. 10, 2010); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *6 (E.D. La. Aug. 25, 2009).[11]

Because prisoners must allege an adequate factual basis for a retaliation claim, purely conclusory allegations of retaliatory motive, such as the one advanced by plaintiff, are clearly insufficient.  See Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing as frivolous conclusory allegations that a prison official's action was taken in retaliation for the prisoner's prior complaints); see also Moore v. Thaler, 436 Fed. App'x 311, 312 (5th Cir. 2011) (holding that a prisoner's "conclusional allegations, based solely on his personal beliefs, were not sufficient to support a valid constitutional claim for ... retaliation").

For these reasons, plaintiff's claim that he was housed with Kember as a form of retaliation fails to state a cognizable, nonfrivolous claim.

### 4.  Retaliatory Lockdown

On August 9, 2016, plaintiff and Kember did in fact have a verbal confrontation.  After that confrontation, plaintiff was placed on lockdown.  He claims that his placement on lockdown

---

[11] The Court also notes that plaintiff has failed to explain why the placement of Kember on the medical unit would qualify as an "adverse act" directed at him.  For example, there is no suggestion that Kember and plaintiff were even acquainted, much less had a contentious relationship, or that Kember had a history of provocative behavior at the jail. Therefore, it is unclear why plaintiff believes that defendants had any reason to anticipate that Kember's placement on the unit might cause plaintiff distress.

violated his rights on two grounds:  (1) he was not afforded a hearing before being placed on lockdown and (2) the action stemmed from a retaliatory motive.

Plaintiff's first contention is founded on concerns of due process.  However, under the particular facts of this case, the Court finds that, for the following reasons, due process was not violated simply because plaintiff was not afforded a pre-lockdown hearing in this instance.

When confronted with a pretrial detainee's claim that he was subjected to adverse conditions of confinement without due process of law, the Court must determine whether the measures were taken with a punitive intent.  As the United States Supreme Court explained:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.  Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

Bell v. Wolfish, 441 U.S. 520, 538-39 (1979) (citations, footnotes, quotation marks, and brackets omitted).

Here, plaintiff concedes that he was involved in the confrontation with Kember.  The jail records concerning the incident show that jail officials determined that plaintiff was the aggressor in the incident.  Moreover, those records further show that when officers intervened and plaintiff was told to retrieve his uniform, he immediately became involved in an argument with another

inmate, Blair Anderson.  In both instances, officers feared that the verbal confrontations would turn into physical altercations unless they intervened.[12]

Obviously, such confrontations between inmates pose security concerns at a jail, and jail officials are therefore allowed to take action to protect institutional security *even when the actions adversely affect a pretrial detainee*.  The Supreme Court explained:

> The Government … has legitimate interests that stem from its need to manage the facility in which the individual is detained.  These legitimate operational concerns may require administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up at trial.  For example, the Government must be able to take steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees.  Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial.  We need not here attempt to detail the precise extent of the legitimate governmental interests that may justify conditions or restrictions of pretrial detention.  It is enough simply to recognize that in addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment.

Bell, 441 U.S. at 540 (footnote omitted).  Moreover, the Supreme Court noted:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

Id. at 540 n.23 (quotation marks and brackets omitted).

Mindful of these principles, the Court finds that plaintiff's brief, ten-day confinement on segregated lockdown for actions which posed legitimate security concerns was reasonably related

---

[12] Rec. Doc. 9.

to a the legitimate governmental objective of maintaining institutional security and did not qualify as impermissible "punishment" which would trigger a due process right to a pre-lockdown hearing.

Plaintiff's second contention, i.e. that his placement on lockdown was an illegal form of retaliation, likewise fails. First, again, plaintiff has not identified any direct evidence of a retaliatory motive and, for the reasons previously explained, the mere fact that he had filed a grievance at the jail is, without more, insufficient for the Court to infer a retaliatory motive. Second, in any event, plaintiff cannot establish that the causation required to support a retaliation claim. Specifically, in light of the security issues posed by plaintiff's behavior, he cannot show that he would not have been placed on lockdown but for the purported retaliatory motive.[13]

### 5.  Endangerment

Plaintiff next alleges that he was endangered by Kember's placement on the medical unit. Specifically, plaintiff argues that Kember posed a danger because, due to plaintiff's medical condition, he was unable to protect himself from Kember.

It is true that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). However, the United States Fifth Circuit Court of Appeals has further explained:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to

---

[13] That, of course, is not to say that the existence of a legitimate reason is, in and of itself, an absolute bar to a retaliation claim; it clearly is not. As the United States Fifth Circuit Court of Appeals has explained: "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995). However, the existence of a legitimate reason is probative and potent evidence and poses a significant obstacle for an inmate faced with establishing "but for" causation with respect to a retaliation claim. See id. at 1166. Therefore, where, as here, a legitimate reason exists and the inmate has failed to produce direct evidence of a retaliatory motive or a chronology of events that supports an inference of a retaliatory motive, his retaliation claim obviously fails.

> act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).  Therefore, "*[a]ctual* knowledge and appreciation of the risk are required."  Smith v. Jaramillo, 394 Fed. App'x 183, 185 (5th Cir. 2010) (emphasis in original).  Moreover, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question ...." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); accord Dangerfield v. Dyson, Civ. Action No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008).

Here, plaintiff's allegations are insufficient for the Court to infer that any defendant knew that Kember posed a danger to plaintiff.  Again, there is no suggestion that plaintiff and Kember were known enemies, that Kember had threatened violence against plaintiff in the past, or that Kember had a demonstrated history of violence against his fellow prisoners.  Moreover, there is no evidence that Kember did in fact pose a danger to plaintiff.  Although the two later engaged in the verbal confrontation, plaintiff was determined to be the aggressor in that confrontation.  Further, in any event, the confrontation was terminated before it turned physical.  Under these circumstances, there is simply no basis for concluding that the defendants acted with deliberate indifference merely because they failed to take action based on nothing more than an inmate's unsubstantiated allegations that he might be in danger. See, e.g., Langley v. LeBlanc, Civ. Action No. 15-4396, 2016 WL 626707, at *7 (E.D. La. Feb. 3, 2016), adopted, 2016 WL 615524 (E.D. La. Feb. 16, 2016).

Lastly, even if defendants could be considered to have acted negligently in housing plaintiff and Kember together, "[d]eliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely negligent oversight."

Brown v. Harris County, Texas, 409 Fed. App'x 728, 731 n.6 (5th Cir. 2010) (internal quotation marks omitted).  Simply put: "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."  Baker v. McCollan, 443 U.S. 137, 146 (1979); accord Withrow v. Gusman, Civ. Action No. 11-267, 2011 WL 1468355, at *3 (E.D. La. Mar. 24, 2011), adopted, 2011 WL 1468351 (E.D. La. Apr. 18, 2011); Elsensohn v. Jefferson Parish Community Correctional Center, Civ. Action No. 09-2759, 2009 WL 5088744, at *3 (E.D. La. Dec. 23, 2009).

For these reasons, this claim should be dismissed as frivolous.

### 6.  Unsanitary Conditions

Plaintiff also complains that he was housed in unsanitary conditions while on lockdown. Clearly, there is a point beyond which a jail's conditions are so unsanitary as to render them unconstitutional.  See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional).  However, while a jail should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be."  McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions.").  The conditions plaintiff alleges, even if true, fail to cross the impermissible line between uncomfortable and unconstitutional.

Moreover, it must be remembered that "the length of time spent in the offensive conditions should be taken into account."  Alexander v. Tippah County, Mississippi, 351 F.3d 626, 631 (5th Cir. 2003). For example, the United States Supreme Court has noted "that the length of

confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." Hutto v. Finney, 437 U.S. 678, 686-87 (1978). Here, plaintiff was on lockdown for only ten days.

In light of the foregoing considerations, it is clear that plaintiff's allegations challenging the conditions of his confinement on lockdown fail to state a cognizable, nonfrivolous claim.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-second day of September, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**